# Exhibit A

## FLSA AND ARIZONA WAGE SETTLEMENT AGREEMENT

This Settlement Agreement (the "Agreement") is entered into by and between **Shrader & Martinez Construction USA, LLC** (referred to throughout this Agreement as "Employer") and **Charles Rape** ("Employee"). The term "Party" or "Parties" as used herein shall refer to Employer, Employee, or both, as may be appropriate.

1.    **Recitals.**

This Agreement is made with reference to the following facts:

(a)    Employee was formerly employed by Employer**;**

(b)    Employee's last day as an employee with Employer was March 17, 2021 ("Separation Date");

(c)    On or about July 16, 2021, Employee brought an action against Employer, *Charles Rape v. Shrader & Martinez Construction USA, LLC*, Case 3:21-cv-08158-DJH, as a collective and class action which is pending in Arizona District Court  (the "Lawsuit").  In the Lawsuit, Employee asserts claims on behalf of himself and others for unpaid overtime under the Fair Labor Standards Act and Arizona Wage Statutes; and

(d)    There has been no determination on the merits of the Lawsuit but, in order to avoid additional cost and the uncertainty of litigation, Employee and Employer have agreed, subject to the provisions in Paragraph 5 below, to resolve all claims asserted by Plaintiff Charles Rape in the Lawsuit against Employer and/or Employer's direct and indirect parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, reinsurers, professional employment organizations, representatives, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities (collectively referred to throughout the remainder of this Agreement as "Releasees") as of the date of execution of this Agreement.

2.    **Consideration/Indemnification for Tax Consequences and Liens.**

(a)    In consideration for Employee signing this Agreement, and complying with its terms, Employer agrees to pay the total gross sum of TWENTY-FOUR THOUSAND DOLLARS ($24,000) (the "Settlement Payment"), to be paid as follows:

(1)    One payment for alleged overtime wages by check made payable to "Charles Rape" in the amount of EIGHT THOUSAND THREE HUNDRED THIRTY-THREE DOLLARS AND THIRTY THREE CENTS ($8,333.33), less applicable payroll/tax withholdings, for which Employer shall issue an IRS Form W-2 to Employee;

(2)    One payment for alleged liquidated damages by check made payable to "Charles Rape" in the amount of SEVEN THOUSAND THREE HUNDRED THIRTY-THREE DOLLARS AND THIRTY THREE CENTS ($7,333.33), for which Employer shall issue an IRS Form 1099-MISC to Employee;

(3)    One payment for alleged attorneys' fees and costs by check made payable to "Anderson Alexander, PLLC" ("Employee's Counsel") in the amount of EIGHT THOUSAND THREE HUNDRED THIRTY THREE DOLLARS AND THIRTY FOUR CENTS ($8,333.34), for which an IRS Form 1099-MISC shall be issued each to Employee and to Employee's Counsel.

(b)    Employee understands and agrees Employer is providing Employee with no representations regarding tax obligations or consequences that may arise from this Agreement. Employee, for Employee and Employee's dependents, successors, assigns, heirs, executors and administrators (and Employee's legal representatives of every kind), agrees to indemnify and hold the Releasees harmless for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against any of the Releasees in connection with such governmental authority's determination that Employer or any of the other Releasees was required to, but failed to, withhold or report the correct amount of income or employment taxes from the payments made to Employee or Employee's Counsel pursuant to Paragraph 2(a)(2) or 2(a)(3) of this Agreement. Employee agrees that Employee shall indemnify the Releasees for the full amount of such liability within thirty (30) days after receipt of notice from Employer or any of the other Releasees of the assessment of such taxes, penalties, or interest.

(c)    Any settlement payments made by check set forth in this paragraph will be delivered by mail to Employee's Counsel at Anderson Alexander, PLLC, 819 North Upper Broadway, Corpus Christi, Texas 78401.

**3.    No Consideration Absent Execution of this Agreement.**

Employee understands and agrees that Employee would not receive the monies and/or benefits specified in Paragraph 2(a) above pursuant to this Agreement, except for Employee's timely execution of this Agreement and the fulfillment of the promises contained herein.

**4.    Disbursal of Settlement Funds/Dismissal of Action.**

(a)    The settlement payments described in Paragraph 2(a) will be sent within fourteen (14) business days after the latest of the following have occurred:

(1)    counsel for Employer receives a copy of the Agreement signed by Employee;

(2)    counsel for Employer receives an executed W-9 Form from Employee's Counsel;

(3)    dismissal of the Lawsuit with prejudice following Court approval; and

(4) Employee and Employer execute a separate General Release Agreement..

**5.    Wage and Hour Release**

2

Employee and Employee's heirs, executors, administrators, successors, and assigns knowingly and voluntarily release and forever discharge Releasees, of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement under the Fair Labor Standards Act, Arizona Wage Statutes, and any other state or local wage and hour laws.

6.    **Acknowledgments and Affirmations.**

(a)    Employee affirms that Employee has not filed, caused to be filed, or presently is a party to any claim against Employer, except the Lawsuit, which is being dismissed with prejudice following court approval. Nothing in this Agreement or these Affirmations is intended to impair Employee's rights under whistleblower laws or cause Employee to disclose Employee's participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

(b)    Employee also affirms that following payment through this agreement, Employee has been paid and/or has received all compensation, wages, bonuses, commissions, paid sick leave, predictability pay, and/or benefits which are due and payable as of the date Employee signs this Agreement and Employee has been reimbursed for all necessary expenses or losses incurred by Employee within the scope of Employee's employment.

(c)    Employee and Employer acknowledge Employee's rights to make truthful statements or disclosures required by law, regulation, or legal process and to request or receive confidential legal advice, and nothing in this Agreement shall be deemed to impair those rights.

7.    **Governing Law and Interpretation**.

This Agreement shall be governed and conformed in accordance with the laws of Arizona without regard to its conflict of laws provision. In the event of an alleged breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach, including but not limited to attorneys' fees and costs reasonably and necessarily incurred by the prevailing party. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

8.    **Non-admission of Wrongdoing.**

The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

9.    **Amendment.**

This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

10.    **Entire Agreement.**

This Agreement and the General Release set forth the entire agreement between the Parties hereto, and fully supersedes any prior agreements or understandings between the Parties, except for any arbitration, intellectual property, noncompete, restrictive covenant, non-solicitation, nondisclosure, or confidentiality agreements between Employer and Employee, which shall remain in full force and effect according to their terms.  Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

11.    **Counterparts and Signatures**.

This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument.  A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail will have the same effect as the original signature.

12.    **Mutual Negotiation**.

This Agreement was the result of negotiations between the Parties and their respective counsel.  In the event of vagueness, ambiguity, or uncertainty, this Agreement shall not be construed against the Party preparing it, but shall be construed as if both Parties prepared it jointly.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS A REASONABLE AMOUNT OF TIME TO CONSIDER THIS AGREEMENT.  EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT AND HAS IN FACT OBTAINED LEGAL REPRESENTATION ABOUT THE DECISION TO ENTER INTO THIS AGREEMENT BY EMPLOYEE'S COUNSEL, ANDERSON ALEXANDER, PLLC.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**Charles Rape**                          **Shrader & Martinez Construction USA, LLC**

*Charles Rape*
By: Charles Rape (Feb 23, 2022 12:15 CST)_____    By:_____
                                              Dennis Hill, President

Date Feb 23, 2022_____    Date:_____

## <u>GENERAL RELEASE AGREEMENT</u>

This Settlement Agreement (the "Agreement") is entered into by and between **Shrader & Martinez Construction USA, LLC** (referred to throughout this Agreement as "Employer") and **Charles Rape** ("Employee").  The term "Party" or "Parties" as used herein shall refer to Employer, Employee, or both, as may be appropriate.

**1.  <u>Recital.</u>**

Employee and Employer have agreed to resolve any and all claims, known and unknown, asserted and unasserted, which Employee has or may have against Employer and/or Employer's direct and indirect parent corporation, affiliates, subsidiaries, divisions, predecessors, insurers, reinsurers, professional employment organizations, representatives, successors and assigns, and their current and former employees, attorneys, officers, directors and agents thereof, both individually and in their business capacities, and their employee benefit plans and programs and their administrators and fiduciaries, both individually and in their business capacities (collectively referred to throughout the remainder of this Agreement as "Releasees") as of the date of execution of this Agreement.

**2.  <u>Consideration/Indemnification for Tax Consequences and Liens.</u>**

(a)     In consideration for Employee signing this Agreement, and complying with its terms, Employer agrees to pay the total gross sum of ONE THOUSAND DOLLARS (the "Settlement Payment"), by check made payable to "Charles Rape," for which an IRS Form 1099-MISC shall be issued to Employee.

(b)     Employee understands and agrees Employer is providing Employee with no representations regarding tax obligations or consequences that may arise from this Agreement. Employee, for Employee and Employee's dependents, successors, assigns, heirs, executors and administrators (and Employee's legal representatives of every kind), agrees to indemnify and hold the Releasees harmless for the amount of any taxes, penalties, or interest that may be assessed by any governmental tax authority against any of the Releasees in connection with such governmental authority's determination that Employer or any of the other Releasees was required to, but failed to, withhold or report the correct amount of income or employment taxes from the payments made to Employee or Employee's Counsel pursuant to Paragraph 2(a) of this Agreement.  Employee agrees that Employee shall indemnify the Releasees for the full amount of such liability within thirty (30) days after receipt of notice from Employer or any of the other Releasees of the assessment of such taxes, penalties, or interest.

(c)     Any settlement payments made by check set forth in this paragraph will be delivered by mail to Employee's Counsel at Anderson Alexander, PLLC, 819 North Upper Broadway, Corpus Christi, Texas 78401.

**3.  <u>No Consideration Absent Execution of this Agreement.</u>**

Employee understands and agrees that Employee would not receive the monies and/or benefits specified in Paragraph 2(a) above pursuant to this Agreement, except for Employee's timely execution of this Agreement and the fulfillment of the promises contained herein.

4. **Disbursal of Settlement Funds/Dismissal of Action.**

        (a)    The settlement payments described in Paragraph 2(a) will be sent within fourteen (14) business days after the latest of the following have occurred:

           (1)    counsel for Employer receives a copy of the Agreement signed by Employee;

           (2)    counsel for Employer receives an executed W-9 Form from Employee's Counsel;

           (3)    dismissal of *Charles Rape v. Shrader & Martinez Construction USA, LLC*, Case 3:21-cv-08158-DJH, with prejudice, following Court approval;

           (4)    Employee returns all of Employer's property, documents, and/or any confidential information in Employee's possession or control; and

           (5)    the revocation period following the signing of this Agreement has expired.

5. **General Release, Claims Not Released and Related Provisions.**

        (b)    **General Release of All Claims.**   Employee and Employee's heirs, executors, administrators, successors, and assigns knowingly and voluntarily release and forever discharge Releasees, of and from any and all claims, known and unknown, asserted or unasserted, which the Employee has or may have against Releasees as of the date of execution of this Agreement, including, but not limited to, any alleged violation of the following, as amended:

- Title VII of the Civil Rights Act of 1964;
- Sections 1981 through 1988 of Title 42 of the United States Code;
- The Employee Retirement Income Security Act of 1974 ("ERISA");
- The Internal Revenue Code of 1986;
- The Immigration Reform and Control Act;
- The Americans with Disabilities Act of 1990;
- The Worker Adjustment and Retraining Notification Act;
- The Fair Credit Reporting Act;
- The Family and Medical Leave Act;
- The Equal Pay Act;
- The Fair Labor Standards Act;
- The Genetic Information Nondiscrimination Act of 2008;
- The Age Discrimination in Employment Act of 1967 ("ADEA");
- The Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA");
- The Arizona Civil Rights Act;
- The Arizona Fair Wages and Healthy Families Act;

2

- The Arizona Wrongful Discharge Statute;
- The Arizona Employment Protection Act;
- The Arizona Wage Statutes;
- The Louisiana Wage Payment Act (La. R.S. 23:631 *et seq.*).;
- The Louisiana Employment Discrimination Act (La. R.S. 23:301 *et seq.*).;
- The Louisiana Whistleblower Statute (La. R.S. 23:967);
- Civil Code Article 2315 *et seq.*;
- any other federal, state or local law, rule, regulation, or ordinance;
- any public policy, contract, tort, or common law including but not limited to any claims for wrongful discharge (actual or constructive), breach of implied or express contract, harassment of any kind, unpaid wages, vacation or sick leave pay, intentional or negligent infliction of emotional distress, defamation; or
- any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters.

(c)    **Claims Not Released.**  Employee is not waiving any rights Employee may have to: (i) Employee's own vested or accrued employee benefits under Employer's qualified retirement benefit plans as of the Separation Date; (ii) benefits and/or the right to seek benefits under applicable workers' compensation and/or unemployment compensation statutes; (iii) pursue claims which by law cannot be waived by signing this Agreement; or (iv) enforce this Agreement.

(d)    **Governmental Agencies.**  Nothing in this Agreement prohibits, prevents, or otherwise limits Employee from filing a charge or complaint with or participating, testifying, or assisting in any investigation, hearing, or other proceeding before any federal, state, or local government agency or in any legislative or judicial proceeding nor does anything in this Agreement preclude, prohibit or otherwise limit, in any way, Employee's rights and abilities to contact, communicate with or report unlawful conduct to federal, state, or local officials for investigation or participate in any whistleblower program administered by any such agencies. However, to the maximum extent permitted by law, Employee agrees that if such an administrative claim is made, Employee shall not be entitled to recover any individual monetary relief or other individual remedies.

(e)    **Collective/Class Action Waiver.**  If any claim is not subject to release, to the extent permitted by law, Employee waives any right or ability to be a class or collective action representative or to otherwise participate in any putative or certified class, collective or multi-party action or proceeding based on such a claim in which Employer or any other Releasee identified in this Agreement is a party

6.    **Acknowledgments and Affirmations.**

(a)    Employee confirms that prior to the execution of this Agreement, Employee has not revealed its terms, or the terms of the Parties' Settlement Agreement of Employee's claims under the Fair Labor Standards Act and Arizona Wage Statutes alleged in *Charles Rape v. Shrader & Martinez Construction USA, LLC*, Case 3:21-cv-08158-DJH (the "Lawsuit"), which is incorporated herein, to any third parties other than as required for the settlement of the FLSA Action to be reviewed by the District Court.  Prospectively, Employee agrees not to disclose the

existence or substance of this Agreement or the Parties' Settlement Agreement in the Lawsuit ("the FLSA.AZ Agreement") to the maximum extent any such prohibition is legally permissible, except to Employee's spouse, tax advisor, an attorney with whom Employee chooses to consult regarding Employee's consideration of this Agreement and/or to any federal, state or local government agency. Nothing in this Agreement has the purpose or effect of preventing Employee from making truthful disclosures about alleged unlawful conduct.

       (b)    Nothing in this Agreement or these Affirmations is intended to impair Employee's rights under whistleblower laws or cause Employee to disclose Employee's participation in any governmental whistleblower program or any whistleblowing statute(s) or regulation(s) allowing for anonymity.

       (c)    Employee affirms that Employee has submitted expense reports for all necessary expenses or losses incurred by Employee within the scope of Employee's employment. Employee affirms that Employee has been granted any leave to which Employee was entitled under the Family and Medical Leave Act and state and local leave and disability accommodation laws.

       (d)    Employee further affirms that Employee has no known workplace injuries or occupational diseases.

       (e)    Employee also affirms that Employee has not divulged any proprietary or confidential information of Employer and will continue to maintain the confidentiality of such information consistent with Employer's policies and Employee's agreement(s) with Employer and/or common law. Under the federal Defend Trade Secrets Act of 2016, Employee shall not be held criminally or civilly liable under any federal or state trade secret law for the disclosure of a trade secret that: (a) is made (i) in confidence to a federal, state, or local government official, either directly or indirectly, or to an attorney; and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made to Employee's attorney in relation to a lawsuit against Employer for retaliation against Employee for reporting a suspected violation of law; or (c) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal.

       (f)    Employee further affirms that Employee has not reported internally to Employer any allegations of wrongdoing by Employer or its officers, including any allegations of corporate fraud, and Employee has not been retaliated against for reporting any such allegations internally to Employer.

       (g)    Employee shall not apply in the future for employment with Employer, its parent, or any affiliated entities, as an employee, temporary employee, or independent contractor, because of, among other things, irreconcilable differences with Employer. Employee further agrees that in the event he does apply and is mistakenly hired, this Agreement may be used as a basis to terminate his employment immediately.

       (h)    Employee affirms that all of Employer's decisions regarding Employee's pay and benefits through the date of Employee's execution of this Agreement were not discriminatory based on age, disability, race, color, sex, religion, national origin or any other classification protected by law.

(i)     Employee and Employer acknowledge Employee's rights to make truthful statements or disclosures required by law, regulation, or legal process and to request or receive confidential legal advice, and nothing in this Agreement shall be deemed to impair those rights.

## 7.  **Return of Property.**

Except as provided otherwise in this Agreement or by law, Employee affirms that Employee has returned all of Employer's property, documents, and/or any confidential information in Employee's possession or control.

Employee also affirms that Employee is in possession of all of Employee's property that Employee had at Employer's premises and that Employer is not in possession of any of Employee's property.

## 8.  **Non-Disparagement.**

Employee agrees to refrain from making false statements that are disparaging, demeaning, or defamatory about Releasees, or Releasees' customers, suppliers, or vendors, including but not limited to communications on social media websites such as Facebook, Twitter, LinkedIn, or Glassdoor on blogs, by text or email or other electronic means.  This provision does not prohibit Employee from making truthful statements about the terms or conditions of Employee's employment, or from exercising Employee's rights under the National Labor Relations Act, government whistleblower programs, or whistleblowing statutes or regulations. Employer agrees to provide a neutral reference with dates of employment and position held to any prospective employers who inquire about Employee's employment with Employer.

## 9.  **No Contact**.

Employee agrees not to initiate contact with any of Employer's customers with respect to any business conducted with Employer. However, this prohibition shall not affect Employee's right to perform his primary job duties for other employers.

## 10.  **Liquidated Damages.**

It is agreed that in the event of a breach by Employee of Paragraph 6(a) (Confidentiality) or  Paragraph 8 (Non-Disparagement), or Paragraph 9 (No contact),  it would be impractical or extremely difficult to fix actual damages to the aggrieved party. Therefore, the parties agree that in the event of such a breach, Employee shall pay to Employer, as liquidated damages, and not as a penalty, the sum of EIGHT THOUSAND DOLLARS ($8,000) for each breach, which represents reasonable compensation to Employer for the loss incurred because of such a breach. However, in no event will Employee be liable for damages in an amount greater than the total of Twenty-Five Thousand Dollars ($25,000) he received under this Agreement and the FLSA.AZ Settlement Agreement.

## 11.  **Medicare Secondary Payer Rules.**

(a)     As a term of this Agreement, the parties have fully considered Medicare's interests pursuant to the Medicare Secondary Payer rules.  In doing so, Employee affirms that as

of the date Employee signs this Agreement, Employee is not Medicare eligible (i.e., is not is not 65 years of age or older; is not suffering from end stage renal failure; has not received Social Security Disability Insurance benefits for 24 months or longer, etc.). Nonetheless, if the Centers for Medicare & Medicaid Services (CMS) (this term includes any related agency representing Medicare's interests) determines that Medicare has an interest in the payment to Employee under this settlement, Employee agrees to (i) indemnify, defend and hold Releasees harmless from any action by CMS relating to medical expenses of Employee, (ii) reasonably cooperate with Releasees upon request with respect to any information needed to satisfy the reporting requirements under Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007, if applicable, and any claim that the CMS may make and for which Employee is required to indemnify Releasees under this paragraph, and (iii) waive any and all future actions against Releasees for any private cause of action for damages pursuant to 42 U.S.C. § 1395y(b)(3)(A).

**12. <u>Governing Law and Interpretation.</u>**

This Agreement shall be governed and conformed in accordance with the laws of Arizona without regard to its conflict of laws provision. In the event of a breach of any provision of this Agreement, either party may institute an action specifically to enforce any term or terms of this Agreement and/or to seek any damages for breach, including but not limited to attorneys' fees and costs reasonably and necessarily incurred by the prevailing party. Should any provision of this Agreement be declared illegal or unenforceable by any court of competent jurisdiction and cannot be modified to be enforceable, excluding the general release language, such provision shall immediately become null and void, leaving the remainder of this Agreement in full force and effect.

**13. <u>Non-admission of Wrongdoing.</u>**

The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by Releasees of wrongdoing or evidence of any liability or unlawful conduct of any kind.

**14. <u>Amendment.</u>**

This Agreement may not be modified, altered or changed except in writing and signed by both Parties wherein specific reference is made to this Agreement.

**15. <u>Entire Agreement.</u>**

This Agreement sets forth the entire agreement between the Parties hereto, other than the Parties' Agreement to the Lawsuit, which is expressly incorporated herein, and fully supersedes any prior agreements or understandings between the Parties, except for any arbitration, intellectual property, noncompete, restrictive covenant, non-solicitation, nondisclosure, or confidentiality agreements between Employer and Employee, which shall remain in full force and effect according to their terms. Employee acknowledges that Employee has not relied on any representations, promises, or agreements of any kind made to Employee in connection with Employee's decision to accept this Agreement, except for those set forth in this Agreement.

**16. <u>Counterparts and Signatures.</u>**

This Agreement may be signed in counterparts, each of which shall be deemed an original, but all of which, taken together shall constitute the same instrument. A signature made on a faxed or electronically mailed copy of the Agreement or a signature transmitted by facsimile or electronic mail will have the same effect as the original signature.

**17. <u>Mutual Negotiation.</u>**

This Agreement was the result of negotiations between the Parties and their respective counsel. In the event of vagueness, ambiguity, or uncertainty, this Agreement shall not be construed against the Party preparing it, but shall be construed as if both Parties prepared it jointly.

**EMPLOYEE IS ADVISED THAT EMPLOYEE HAS UP TO TWENTY-ONE (21) CALENDAR DAYS TO CONSIDER THIS AGREEMENT. EMPLOYEE ALSO IS ADVISED TO CONSULT WITH AN ATTORNEY PRIOR TO EMPLOYEE'S SIGNING OF THIS AGREEMENT AND HAS IN FACT OBTAINED LEGAL REPRESENTATION ABOUT THE DECISION TO ENTER INTO THIS AGREEMENT BY EMPLOYEE'S COUNSEL, ANDERSON ALEXANDER, PLLC.**

**EMPLOYEE MAY REVOKE HIS RELEASE OF ANY CLAIMS UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT ("ADEA") FOR A PERIOD OF SEVEN (7) CALENDAR DAYS FOLLOWING THE DAY ON WHICH EMPLOYEE SIGNS THIS AGREEMENT AND THE AGREEMENT IS NOT ENFORCEABLE UNTIL THE REVOCATION PERIOD HAS EXPIRED. ANY REVOCATION WITHIN THIS PERIOD MUST BE SUBMITTED, IN WRITING, TO AMY GITTLER @ amy.gittler@jacksonlewis.com AND STATE, "I HEREBY REVOKE MY RELEASE OF ALL CLAIMS UNDER THE ADEA." THE REVOCATION MUST BE RECEIVED WITHIN SEVEN (7) CALENDAR DAYS AFTER EMPLOYEE SIGNS THIS AGREEMENT. IN THE EVENT OF REVOCATION, THIS AGREEMENT SHALL REMAIN IN FULL FORCE AND EFFECT EXCEPT AS TO ANY ADEA CLAIM.**

**EMPLOYEE AGREES THAT ANY MODIFICATIONS, MATERIAL OR OTHERWISE, MADE TO THIS AGREEMENT, DO NOT RESTART OR AFFECT IN ANY MANNER THE ORIGINAL CONSIDERATION PERIOD.**

**EMPLOYEE FREELY AND KNOWINGLY, AND AFTER DUE CONSIDERATION, ENTERS INTO THIS AGREEMENT INTENDING TO WAIVE, SETTLE AND RELEASE ALL CLAIMS EMPLOYEE HAS OR MIGHT HAVE AGAINST RELEASEES.**

The Parties knowingly and voluntarily sign this Agreement as of the date(s) set forth below:

**Charles Rape**

**Shrader & Martinez Construction**

By: *Charles Rape*
_____
Charles Rape (Feb 23, 2022 12:15 CST)

By: _____

    Dennis Hill, President

Date Feb 23, 2022
_____

Date:_____